UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

   -v-                                      1:17-CV-1168

VICKRAM BEDI, President,
and DATALINK COMPUTER
PRODUCTS, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

HON. GRANT C. JAQUITH              MARY E. LANGAN, ESQ.
United States Attorney for the         Ass't United States Attorney
    Northern District of New York
Attorneys for Plaintiff
100 South Clinton Street, Room 900
Syracuse, NY 13261

U.S. DEPARTMENT OF LABOR         JASON E. GLICK, ESQ.
Office of the Solicitor                    Special Ass't United States Attorney
Attorneys for Plaintiff
201 Varick Street, Room 983
New York, NY 10014

CARTER, LEDYARD LAW FIRM        ALAN S. LEWIS, ESQ.
Attorneys for Defendants
2 Wall Street
New York, NY 10005

DAVID N. HURD
United States District Judge

# MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On October 19, 2017, plaintiff United States of America (the "Government") filed this civil action against defendants Datalink Computer Products, Inc. ("Datalink"), a computer sales and services company, and Datalink's President Vickram Bedi ("Bedi"), in an effort to collect back pay awarded by the U.S. Department of Labor ("DOL") to former Datalink employee Helga Ingvarsdottir ("Helga").

On January 29, 2018, Datalink and Bedi (collectively "defendants") moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking to dismiss the Government's complaint in its entirety. Defendants raised two arguments in favor of dismissal: first, they argued the Government's action was premature because the limitations period for seeking judicial review of the DOL's administrative award of back pay had not yet expired; second, they argued the Government was not the proper party to collect the back pay award because it is money owed to Helga, not to the Government.

After the dismissal motion was fully briefed and taken on submit, an attorney from the DOL's Office of the Solicitor entered an appearance in the case and requested oral argument, which was heard on May 16, 2018 in Utica, New York. Shortly thereafter, this Court denied defendants' motion to dismiss and directed defendants to serve an answer to the Government's complaint. United States v. Bedi, 318 F. Supp. 3d 561 (N.D.N.Y. 2018) (the "June Order")

But instead of joining issue, on July 12 defendants moved under 28 U.S.C. § 1292(b) seeking to certify the June Order for interlocutory appeal and for a stay of further proceedings in this forum pending the outcome of that appeal. The Government has

opposed both motions, which are fully briefed and will be decided on the basis of the submissions without oral argument.

## II. **DISCUSSION**

The complete factual and procedural background is recounted in the June Order and will not be repeated here. Bedi, 318 F. Supp. 3d at 563-64. For current purposes, it is sufficient to recall that (1) the Government's debt collection effort against defendants is premised on the Federal Debt Collection Procedures Act of 1990 ("FDCPA"); and (2) the parties vehemently disagree about whether the FDCPA authorizes the Government to come after defendants to collect a back wage award that is ultimately owed to a third party. Id. at 565, 566-67.

The June Order tentatively resolved that disagreement in the Government's favor when it denied defendants' motion to dismiss. Bedi, 318 F. Supp. 3d at 568 ("The complexities of this case, real or imagined, are better suited for disposition at summary judgment or trial."). Defendants, of course, think the June Order came out the wrong way on this question and believe they can convince an appellate panel to agree with them. But they don't want to wait until the conclusion of proceedings here in trial court; they want to do it right now.

In federal practice, that is easier said than done. "Unlike civil practice in many state courts, federal appellate jurisdiction is generally limited to review of only the 'final decisions' of the district courts." Ward v. Stewart, 284 F. Supp. 3d 223, 227 (N.D.N.Y. 2018).

"This final-judgment rule, now codified in [28 U.S.C. § 1291], preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would

- 3 -

result from repeated interlocutory appeals, and promotes the efficient administration of justice." Ward, 284 F. Supp.3d at 227 (citations omitted).

"In § 1291 Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by 'piecemeal appellate review of trial court decisions which do not terminate the litigation.'" Ward, 284 F. Supp. 3d at 227 (quoting Fischer v. N.Y. State Dep't of Law, 812 F.3d 268, 273 (2d Cir. 2016)).

However, "[i]n 1958 Congress created a 'procedure for establishing appellate jurisdiction to review nonfinal orders in civil actions." Ward, 284 F. Supp. 3d at 228 (citation and internal quotation marks omitted). As relevant here, the statutory enactment vests a district court with discretion to certify an order in a civil action for immediate appeal if (1) it "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

"[T]he proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met." Ward, 284 F. Supp. 3d at 228 (quoting In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014)). "However, even where the three legislative criteria of [§ 1292(b)] appear to be met, district courts retain unfettered discretion to deny certification if other factors counsel against it." Id. "As courts have repeatedly observed, § 1292(b) was not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation or to be a vehicle to provide early review of difficult rulings in hard cases." Id.

- 4 -

Defendants argue they are entitled to skip the ordinary adjudicative process that takes place here in the trial court because an immediate reversal of the June Order's holding as to this question (i.e., whether the FDCPA authorizes the Government to collect a back pay award ultimately owed to a third party) would dispose of this case once and for all.

The June Order considered this question at length. For present purposes, though, it is enough to say that the FDCPA sweeps broadly. It authorizes the Government to collect a wide range of "debts" owed, and it includes among other things "an amount that is owing to the United States on account of a . . . fine, assessment, penalty, restitution, damages, interest, . . . or other source of indebtedness to the United States." 28 U.S.C. § 3002(3)(B).

The wrinkle here is that the FDCPA explicitly carves out from this definition of "debt" any amount "owing under the terms of a contract originally entered into by only persons other than the United States." 28 U.S.C. § 3002(3)(B). As defendants suggested then and now, the back pay awarded to Helga originated from some kind of employment contract between her and Datalink. Because the Government was not a party to that agreement back then, the reasoning goes, it cannot show up and wield its power under the FDCPA to collect wages due under the agreement now.

The Government's response is threefold: first, it argues that defendants' proposed issue for interlocutory appeal is actually based on a disputed question of *fact*, not law (i.e., the contract's existence)[1]; second, it points out that the June Order's answer to the question of the FDCPA's reach is the result of the appropriate application of controlling Second Circuit precedent; and third, waiting for a final judgment in the trial court before taking an appeal will

---

[1] For reasons mentioned below, the Government argues that this question of fact is irrelevant for purposes of this case—the debt owed by defendants results from their violation of a statute, not a contract.

pose no hardship in this case because it can be decided on the basis of a cold administrative record with little, if any, delay for discovery.

As it did the last time around, the Government still has the better of this argument. The precedent from which defendants keep trying to squirm away is Nat'l Labor Relations Bd. v. E.D.P. Med. Comput. Sys., Inc., 6 F.3d 951, 954 (2d Cir. 1993) ("E.D.P."), a case in which a split panel of the Second Circuit permitted the National Labor Relations Board ("NLRB"), a federal agency, to use the FDCPA to satisfy an administrative award against an employer for back wages owed to its employees.

Defendants grudgingly acknowledge that E.D.P.'s holding is bad news for their defense. But it is the dissent in E.D.P. that they continue to find more compelling. There, Judge Walker made the case that the Government could not use the FDCPA to collect administrative back pay awards because they do not qualify as debts "owing" to the United States within the meaning of the statute. E.D.P., 6 F.3d at 958 (Walker, J., dissenting). In Judge Walker's view, the agency's function in the wage dispute "was merely to serve as 'the vehicle by which the claimants [could] obtain their individual awards' for back wages." Bedi, 318 F. Supp. 3d at 567 (citation and footnote omitted).

The June Order noted there was a non-frivolous argument to be made that similar reasoning could apply to defendants' wage dispute with Helga, since the H-1B program's regulatory provisions appear to direct the DOL to receive back wages and then distribute them to aggrieved employees. Bedi, 318 F. Supp. 3d at 567 n.5.

For the record, that is not precisely the argument defendants chose to advance. As mentioned above, they opted instead for a more straightforward variation on the theme by suggesting that an as-yet-unseen employment contract exists between Helga and Datalink.

If only it were so straightforward. Datalink hired Helga through the H-1B visa program, which permits U.S. employers to hire foreign workers in specialty occupations subject to certain regulations. Bedi, 318 F.Supp. 3d at 563. Among other things, the H-1B program requires an employer seeking a visa to submit to the DOL a sworn document in which it promises to pay the foreign worker a specified wage for a specified period of employment. Id. at 563-64.

The Government explains that this sworn document, known as a Labor Condition Application ("LCA"), is not an employment contract and, in any event, is not the basis of its present enforcement action. According to the Government, the back wage award at issue resulted from the DOL's administrative conclusion that defendants were in violation of certain H-1B wage rates that are fixed by *statute*, not some contract or other agreement. The Government, having now done some additional legwork, points to multiple instances in which it has pursued administrative back pay awards owed to H-1B visa workers through federal courts in this Circuit and in others. Gov. Mem., Dkt. No. 28 at 13 n.4.[2]

In other words, by all available accounts (except defendants' own, of course), the Government's position on this rather complex topic is correct. E.D.P., 6 F.3d at 954; Kutty v. U.S. Dep't of Labor, 2011 WL 3664476, at *9 (E.D. Tenn. Aug. 19, 2011) ("It does not matter whether the private contacts were inconsistent with the wages listed in the LCAs. The H-1B [employees] wages were set by statute, not by contract . . . . [r]egardless of the private contracts, [the employer] had to pay the 'required wage' as set forth in the [Immigration and Nationality Act].").

---

[2] Pagination corresponds with CM/ECF.

Even if defendants' version of the contract-based argument were also a non-frivolous litigating position, it was then and must remain now an unsuccessful one, at least while the E.D.P. majority opinion remains standing in the way. Presumably, Judge Walker made his more restrictive view about the proper use of the FDCPA known to his fellow panelists, either in conference or perhaps when the opinion (and the dissent) were circulated before publication. For whatever reason(s), his views did not carry the day there. And as a result they cannot carry the day here.

In sum, then, the controlling law of this Circuit is not fundamentally uncertain but simply unfavorable to defendants. Cf. Transp. Workers Union of Am., Local 100, AFL–CIO, 358 F. Supp. 2d at 354 ("Certification is to be reserved for the exceptional case in which the law is fundamentally uncertain."). Accordingly, their motion for § 1292(b) certification must be denied.[3]

## III. **CONCLUSION**

To the extent defendants believe their powers of persuasion will induce the Second Circuit to depart from, or possibly limit the reach of, the majority holding in E.D.P., they remain free to attempt that feat, and any others, at the appropriate time—"in a unified appeal at the conclusion of this litigation in the trial court." Ward, 284 F. Supp. 3d at 239.

Therefore, it is

ORDERED that

1. Defendants' motion to certify an interlocutory appeal is DENIED;

2. Defendants' motion to stay proceedings pending appeal is DENIED; and

---

[3] Because this antecedent request will be denied, the motion for a stay will be denied as moot. See, e.g., Sussman v. I.C. Sys., Inc., 2013 WL 5863664, at *4 (S.D.N.Y. Oct. 30, 2013).

3. Defendants shall file and serve an answer to the complaint on or before February 11, 2019.

The Clerk of the Court is directed to terminate the associated motions and to issue a scheduling notification setting defendants' time to answer the complaint accordingly.

IT IS SO ORDERED.

Dated: January 28, 2019
       Utica, New York.

_____
United States District Judge